FILED

03/31/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 2, 2021

**BUDDY RAY SMALL v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Henderson County
No. 18-044-2 Donald H. Allen, Judge**

_____

**No. W2020-00064-CCA-R3-PC**

_____

Buddy Ray Small, Petitioner, was indicted for first degree murder, abuse of a corpse, and arson. He pled guilty to a reduced charge of second degree murder in addition to the other charges as listed in the indictment in exchange for an effective sentence of thirty-five years at 100%. Petitioner filed a petition for post-conviction relief, in which he alleged that his guilty plea was unknowing and involuntary and that he received the ineffective assistance of counsel. After a hearing, the post-conviction court denied relief. In this appeal, Petitioner challenges the denial of post-conviction relief. After a review, we affirm the judgment of the post-conviction court. However, because there are clerical errors in the judgment forms, we remand to the post-conviction court for correction of the judgment forms.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and J. ROSS DYER, JJ., joined.

Michael Thorne, Lexington, Tennessee, for the appellant, Buddy Ray Small.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Ken C. Baldwin, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner was indicted by the Henderson County Grand Jury for first degree murder, arson, and abuse of a corpse.[1]

At the guilty plea hearing, the trial court accepted guilty pleas in case number 18-044-2, the subject of this appeal, as well as case number 18-045-2. The technical record in this case does not include a petition for post-conviction relief in case number 18-045-2 so our discussion of that case number ends here.

At the plea hearing, Petitioner denied being under the influence of drugs or alcohol and confirmed that he had reviewed the contents of the plea offer with his attorney. The trial court reviewed Petitioner's rights and the ramifications of entering the plea. Petitioner acknowledged that he understood all that the trial court reviewed. Petitioner acknowledged that he was entering the plea freely and voluntarily, without pressure from anyone. With respect to the case that is the subject of this appeal, Petitioner acknowledged that he was guilty of second degree murder, arson, and abuse of a corpse.

Counsel for the State explained the factual basis for the plea, stating that had the case gone to trial, the State would have proven:

> [Petitioner] shot B.J. Ferguson on February 7th. On that same day in an attempt to hide evidence of the crime of the shooting, he did remove the head of the victim in this case. The head was recovered some time the day after the shooting. He also attempted to set the house on fire and by doing that did burn the body of B.J. Ferguson. We are able to recover some remains. Those were identified by the State of Tennessee TBI Forensics because he could not be identified by facial recognition. So, that is the story of the death of B.J. Ferguson, Your Honor.
>
> …
>
> [Petitioner] was [questioned about this], Your Honor. He admitted to what he had done. He actually showed us where he had disposed of the head. At the time we were not able to find it because it was in a brush pile basically

---

[1] The cover page of the indictment lists the charges in the order of first degree murder, arson, and abuse of a corpse, and the individual counts are numbered in that order. Count 1 of the indictment is the first degree murder charge, Count 2 of the indictment is the arson charge, and Count 3 of the indictment is the abuse of a corpse charge. During the plea hearing, the State indicated that the counts were improperly numbered and that the murder charge should be Count 3, the arson charge Count 1, and the abuse of a corpse charge Count 2. The judgment forms indicate the arson charge is Count 1, the abuse of a corpse charge is Count 2, and the murder charge is Count 3. It does not appear that the indictment was amended to change the numbering of the counts. Simply stated, the judgment forms do not align with the offense reflected in the corresponding count of the indictment. On remand, the trial court should enter corrected judgments so that the counts on the judgment forms correspond with the counts on the indictment.

and it got dark, so we had to go back the next morning but we eventually found the head in that location.

…

[Petitioner] admitted to the shooting and he admitted to the burning. He did not admit to the beheading, but he did show us where the head was. He stated that—Your Honor, I don't really know that we ever had a good explanation other than the fact that there was drug use involved, methamphetamine was involved, and so that's about the only explanation I can give the Court.

. . .

[Petitioner and the victim] had been acquainted briefly. It had not been that long. In fact, [the victim] was staying at [Petitioner's] house.

Petitioner admitted this description of the factual basis for the indictment and plea, that it was "at least substantially correct," and that he committed each of these offenses as described by the State.

Petitioner also confirmed that he was satisfied with his trial counsel's representation and that he was fully advised of all the possible legal defenses prior to the entry of the plea. Petitioner confirmed that he was aware that he was pleading to a sentence outside the range of punishment in exchange for the State reducing the charge from first degree murder to second degree murder. The trial court went over the sentence and fine for each charge to which Petitioner was entering a plea and that the plea form would reflect that Petitioner was entering a plea to a sentence outside the range.

As a result of the guilty plea, Petitioner was sentenced to thirty-five years at 100% for second degree murder, six years at 30% for arson, and two years at 30% for abuse of a corpse. The sentences were ordered to be served concurrently for a total effective sentence of thirty-five years.

Petitioner filed a petition for post-conviction relief alleging that his guilty plea was involuntarily entered, his conviction was based on a coerced confession, his conviction was based on a violation of the privilege against self-incrimination, and that he received the ineffective assistance of counsel. Counsel was appointed, and no amended petition was filed. The State filed a response.

At the post-conviction hearing, trial counsel testified that she worked as an Assistant District Public Defender in the 26th Judicial District. Although she had only been at the

public defender's office for about one year at the time, she was licensed to practice law in 2002 and had spent the majority of her career in criminal defense. This was the first murder trial in which she was first chair. She was appointed to represent Petitioner approximately three to four months prior to his guilty plea. She spoke with the attorney who represented Petitioner in General Sessions Court and determined that a forensic evaluation had been performed. The evaluation concluded that Petitioner was competent to stand trial. Despite that evaluation, trial counsel sought and was granted funds for an expert to perform an evaluation of Petitioner. The expert determined that she could not give testimony that would be favorable to Petitioner at trial.

Trial counsel remembered meeting with Petitioner about three times prior to the plea. Trial counsel also asked one of her colleagues to meet with Petitioner because of "the seriousness of the charge." Trial counsel did not recall talking with any witnesses that would have been favorable to the defense.

Trial counsel acknowledged that this was a "pretty straight forward" case where Petitioner made "some statements against interest" after police were called to the scene of an arson where a beheaded body was inside a home. Petitioner was seen at the scene of the fire. Trial counsel also acknowledged that there were no witnesses that would say Petitioner did not commit the crime. Trial counsel acknowledged that even if they pursued a defense that someone else "put [Petitioner] up to [the crime]" it still did not change the evidence against Petitioner.

Trial counsel had "several" conversations with the State with regard to the guilty plea. She discussed the initial plea offer of an "effective sentence of 40 years as a Range 2." She thought Petitioner "was hoping for 25 or 30, but we were - - the State's bottom line was the 35[-]year offer." Trial counsel informed Petitioner about each offer and the State's final offer. Trial counsel recalled the plea hearing, where Petitioner stated that he understood and accepted the plea offer.

Petitioner testified that he wanted to "take [his] plea back" for "insufficient counsel." Petitioner disagreed with trial counsel's claim that she explained the sentence and the plea. He claimed that she "basically told [him] that if [he] did not take the 35 that [he] would take it to trial and lose at trial and probably get life in prison." Petitioner acknowledged, however, that he met with another attorney at the public defender's office and was given the same advice. Petitioner testified that he "didn't want to plea out to 35" and that he felt "scared into taking the plea." Petitioner's acknowledged that these offenses were his first felony charges.

Petitioner complained that his cousin Carlton Small and another man, Randy Small, could have testified at trial and provided a defense or some mitigation for his actions.

- 4 -

Petitioner explained that the men testified at the preliminary hearing that the shooting was accidental. Petitioner was disappointed that trial counsel did not speak with these witnesses. This made him feel like "she wasn't doing her job properly."

Petitioner complained about the number of times he met with trial counsel prior to the plea. He explained that trial counsel would have had a better understanding of the case if she spent more time with Petitioner.

Petitioner agreed at the post-conviction hearing that he admitted that he was satisfied with his trial counsel. He explained that he answered this way because he did not know "how stuff worked." In retrospect, Petitioner claims he would have taken the case to trial but was basically "just trying to get the best outcome out of it."

Petitioner admitted that he "shot [the victim]" and set the house on fire but claimed that he shot him on accident." Petitioner did not admit to cutting off the victim's head.

Petitioner claimed he did not understand that he was pleading outside of his range. Petitioner insisted that he was "scared" into taking the plea but admitted that he had the choice between the plea and a jury trial and that the jury trial was the equivalent of a "roll the dice" situation. Petitioner was also concerned that trial counsel did not have the requisite experience to handle a murder trial.

The post-conviction court denied relief, finding that Petitioner failed to prove the allegations contained within his petition by clear and convincing evidence. Specifically, the post-conviction court determined that the guilty plea was "freely, voluntarily, knowingly, and intelligently entered by Petitioner." Additionally, the post-conviction court determined that trial counsel was not ineffective. Petitioner indicated that he was satisfied with trial counsel and that he understood the ramifications of the guilty plea and clearly admitted his guilt when he "apologized" for killing the victim. During the guilty plea hearing, Petitioner acknowledged his own guilt on more than one occasion and agreed that he was not forced to plead guilty, instead hoping that the State would offer a sentence of "20 years." The post-conviction court noted that the trial court "fully advised" Petitioner about the consequences of the plea and his sentence. The post-conviction court accredited trial counsel's testimony that Petitioner desired an out-of-range sentence and guilty plea rather than a trial.

Petitioner filed an untimely notice of appeal. This Court granted Petitioner's motion to accept the notice of appeal despite its untimely nature. Petitioner challenges the post-conviction court's denial of relief on appeal.

*Analysis*

- 5 -

On appeal, Petitioner complains that he received the ineffective assistance of counsel "which resulted in a guilty plea that was neither knowingly nor intelligently entered." Specifically, Petitioner insists that he did not understand that he was entering a guilty that would result in a sentence outside the range. The State insists that the post-conviction court properly denied relief.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*I. Ineffective Assistance of Counsel*

Petitioner complains about trial counsel's representation. Specifically, Petitioner argues that the post-conviction court erred when it failed to find that trial counsel provided ineffective assistance because she failed to explain to Petitioner that he was being sentenced outside the range for second degree murder.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that

the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). "[I]n order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

A guilty plea "must be entered knowingly, voluntarily, and intelligently." *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (citing *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977). Relevant factors are whether Petitioner was represented by competent counsel, the opportunity to confer with counsel about the options available to him, the extent of advice from counsel concerning the charges against him and the penalty imposed, and the reasons Petitioner pled guilty. *Blankenship v. State*, 858 S.W.2d 897, 904-905 (Tenn. 1993).

Petitioner avers that trial counsel did not explain to him that his sentence was outside the range and that he was "scared" into pleading guilty because he was facing a life sentence. However, the record clearly shows that Petitioner was informed about his sentence prior to the entry of the pleas. Petitioner was originally charged with first degree

murder. Trial counsel explained his sentence exposure if he were to be convicted at trial. It was appropriate and expected that she do so. *See Calvert v. State*, 342 S.W.3d 477, 488 (Tenn. 2011) (determining defense counsel's failure to provide advice regarding sentence exposure prior to a guilty plea may constitute ineffective assistance of counsel). Trial counsel testified that she explained the sentence to Petitioner, and the plea hearing transcript confirms that the trial court explained the sentence to Petitioner. The trial judge questioned Petitioner at length about whether he understood the ramifications of his plea. After admitting that he was guilty of the offenses, Petitioner pled guilty. The plea petition, which was signed by Petitioner, contained a statement that Petitioner "agrees to plead outside of his sentencing range."

Based on the information above, there is no question that Petitioner understood he was agreeing to a greater sentence for second degree murder than he might otherwise receive. It is clear from the record that Petitioner knew he was doing so in order to avoid a possible life sentence. Petitioner has wholly failed to provide clear and convincing evidence that counsel was ineffective or his plea was the result of some type of unknowing and involuntary process. Therefore, Petitioner is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed. However, the matter is remanded to the post-conviction court for entry of corrected judgment forms. On remand, the post-conviction court should ensure that the numbering of the counts on the judgment forms correspond to the numbering of the counts in the indictment.

_____
TIMOTHY L. EASTER, JUDGE